REQUESTED BY: Senator Chris Abboud Nebraska State Legislature
Does L.B. 757, the Sports Operation Act, violate the Nebraska Constitution?
Yes.
As you know, the Nebraska Constitution strictly limits the Legislature on what it may do in authorizing gambling.
Article III, Section 24 of the Nebraska Constitution provides in part: The Legislature shall not authorize any game of chance, nor any lottery, or gift enterprise where the consideration for the chance to participate involves the payment of money for the purchase of property, services, chance or admission ticket, or requires an expenditure of substantial effort or time; . . .
Prior to 1934, the above portion of Section 24 of Article III prohibiting the Legislature from authorizing any games of chance, etc., constituted the entire context of Section 24, Article III.
Since that time there have been three Constitutional Amendments to that section authorizing the Legislature to permit three general areas of gambling; these are:
1. Horse racing by the parimutuel or certificate method when conducted by licensees within the racetrack enclosure.
2. Non-profit lotteries, raffles, and gift enterprises intended solely as business promotions or the proceeds of which are used solely for charitable or community betterment purposes without profit to the promoter.
3. Licensing and regulation of Bingo games conducted by non-profit associations which have been in existence for a period of five years.
Other than the exceptions made to Section 24, Article III of the Constitution as listed above, the Constitution prohibits the Legislature from authorizing any games of chance which require the payment of money or substantial effort or time to play.
L.B. 757 attempts to authorize persons who accept orders on sporting events totalling more than $1,000 in any seven consecutive days or $10,000 in any 365 consecutive days if they obtain a sports pool operator's license from the Department of Revenue. "Order" is defined by the bill as "the making of an offer to an operator, by means of a sum of money, and the acceptance by the operator of the offer resulting in the sum of money being at risk contingent upon the outcome of a sporting event;"
This bill does not restrict the operator or participants from making a profit nor does it require the proceeds to be used solely for charitable or community betterment purposes.
The only question then, under the existing provisions of Section 24, Article III of the Nebraska Constitution is whether or not this bill would authorize a game of chance?
In the case of United States v. Thompson,409 F. Supp. 1044, defendant was convicted of conducting an illegal gambling business. The business involved was one in which defendant printed forecast cards which listed college and professional football games to be played on the following weekend. The card showed a point spread in each game. A player selected 3 to 12 teams and, in effect, bet that the teams selected would do better than the point spread shown. If a player selected all teams right, he would be paid a multiple of his bet, which multiple increased with the number of teams selected.
Defendant argued that the football parlay played was not prohibited by Montana law. The Federal Court stated: "There is no doubt that betting on the outcome of an athletic event is a `game of chance'. . ." The court cited State v. Kilburn, 109 P.2d 113.
The Federal Court also determined the card involved was a gambling device.
State v. Kilburn, 109 P.2d 1113, held that even if a pinball machine involved more skill than chance to win, the betting (paying money to play with chance to win merchandise certificates) made it a game of chance, the court stated:
We believe the correct rule as applied to a case such as this was applied in the case of Peers v. Caldwell, 85 L.J.K.B., N.S., Eng. 754, where the court held that a machine through which a game of skill was played was nevertheless a gambling device when used for the purpose of betting. In other words, an innocent game involving the element of skill alone becomes a gambling device when players bet on the outcome. To illustrate: A game of poker may involve more skill than chance and is innocent when played for pastime and amusement, but constitutes gambling when played for money. In Miller v. United States, 6 App.D.C. 6, the court said: "It has from an early time been held that a horse race is a game of chance, and so is a game of baseball, and so a foot race, where wagers have been made upon them." See, also, note in 60 A.L.R. 343; Sparks v. State,48 Ga. App. 498, 173 S.E. 216, and State v. Livingston,135 Me. 323, 196 A. 407.
The Nebraska Supreme Court has also held pinball machines which awarded free games to winners to be illegal. See discussion in the attached opinion.
In 1985 this office issued official opinion #25 to Senator Ernest Chambers concerning L.B. 72, then pending which authorized wagering on sporting events.
That opinion which determined that betting upon sporting events constituted a game of chance and could not be authorized by the Legislature is still valid. The Supreme Court of Nebraska cases and other authorities discussed therein are still current statements of the law and that opinion applies with equal force to your present question concerning L.B. 757. We therefore attach a copy thereof for your convenience and make it a part of this opinion. Respectfully submitted,
ROBERT M. SPIRE
Attorney General Melvin K. Kammerlohr
Senior Assistant Attorney General